Good morning, your honors. May it please the court. My name is Hirsch Gupta. Along with my colleague, I represent the appellant, Mr. James Smith. I reserve five minutes for rebuttal and will watch my time. Thank you. Your honors, on November 19th, 2022, Officer Olvera encountered a Mr. Smith who was on his knees with his hands up to signal his surrender. Yet Olvera then tackled and beat Smith with his baton while Smith lay face down on the ground without resisting. The district court properly applied the summary judgment standard to conclude at ER 16 that a reasonable juror could find that Olvera violated Smith's Fourth Amendment rights. But the district court failed to apply that summary judgment standard in its clearly established analysis. Properly applying that standard, this court had clearly established Olvera's conduct as unconstitutional for three reasons. First, Smith posed no immediate threat. Second, Smith was non-resisting. And third, Olvera failed to reassess his use of force. As such, this court should reverse the district court's clearly established analysis and remand for trial. Let me start with the first clearly established principle that controls this case, which concerns, is rooted in this idea of an immediate threat. This court, the Supreme Court, and numerous sister circuits have held that officers cannot use force against suspects who pose no immediate threat to officers, to the public, or of fleeing. And the case on point for these facts is Longoria v. Pinell County from 2017. In that case, this court held that it was unreasonable for officers to use deadly force against a suspect who had engaged police in a car chase, during which he exhibited erratic and threatening behavior, because once he'd exited his vehicle and was raising his empty hands in the air, he posed no immediate threat. Okay, so your brief does something, and I'll tell you both, because I'm going to have this question throughout, where there's a rule statement that you're taking, I think, in isolation. And of course, these circumstances that we see tragically often are, we have to look at the totality of the circumstances, right? Yes, Your Honor. Okay. And the most important factor that we're looking at is officer safety or safety of others. Yes?  Okay. And so the Supreme Court has recently reminded us that we're going to look at the totality of the circumstances and not necessarily a freeze frame, which would require, I think, we'll get to that in a minute, about the reassessing each use of force. So there's this very dramatic chase leading up to this incident. And I think your action starts with what I'll call the freeze frame, with his hands raised. So at that point, I think you're arguing he has surrendered and it's over. But there's a couple of problems, right? It's dark. One thing I noticed is the officer didn't pull a gun. He brought a baton out. And so we have to talk about whether that really is the use of deadly force. Sometimes it is, sometimes it isn't, depending on how it's used. But I think you're taking issue with what, right at that moment, the officer should have done what, rather than telling him to get down. In that moment, Your Honor, Officer Olvera simply needed to hit a number of options. He could have simply ordered Smith to remain in that position of surrender until other officers arrived. He could have used hands-on force, as the district court pointed out, to effectuate the arrest in that moment as well. Well, all of that works a lot better if he knows that this person wasn't armed. And what he knows, I think pretty clearly from this record, is that this person was real willing to disobey orders, right? He's evaded. There's been a chase. There's been a couple pit maneuvers. And he's continued to drive off. So it's pretty extreme flight. And so at that point, if we think there's a danger of a weapon, if we think that a reasonable officer in this officer's position may have thought that there was a risk of a weapon, doesn't that change the  case? No, it doesn't, Your Honor. And that's because, a couple points. First, this court has held in Kalanjvi City of San Jose, for example, that suspect's possession of a deadly weapon itself does not justify the use of force. And again, this is rooted in that first principle controlling this case about an immediate threat. Here, unless the suspect makes some sort of threatening gesture or movement to suggest that they have a weapon and are willing to use it, an officer is not justified in using deadly force in that moment. And the case on point might be helpful as Cruz v. City of Anaheim from 2014. In that case, as in Longoria, the suspect had engaged police in a car chase. But as he was exiting his vehicle, the court held that a reasonable juror could find he made no such threatening movement and that instead his movements as he was exiting the car could equally be consistent with the, as being in compliance with the officer's orders. So in this case, we don't have what we had in Cruz or in some of the other cases where there's physical evidence that just flat contradicts what the officer said after the fact, right? We just don't have that here, I don't think. You know the record very well. I commend you on your preparation and I thank you for it. But one of the things this record tells me is that the officer said after the fact in his report that it looked like he lost sight of one hand when he asked this individual, told the individual to get down on the ground. And then in that one point, he suggests that it looked like his hand was going towards his waistband. But Your Honor, a reasonable juror could find that in that moment, Smith was moving out of that position of surrender on his knees with his hands up onto the ground in direct compliance with Olvera's order at minute 617 of Olvera's recording to quote, get on the ground. And subsequently, Olvera orders Smith to put your hands behind your back. And from that position on the ground with his hands up, a reasonable juror couldn't conclude on summary judgment that Smith needed to then move his hands at least at some point toward his waistband in order to comply with Olvera's orders. It could. So that you've got prong one, right? The district court recognized that there's a jury could find a constitutional violation. But we've got this problem on prong two, where we don't look at this with 20-20 hindsight. We don't require that of officers right in the heat of the moment. What's your best response to that? Your Honor, at the prong two stage, what officers, the crux of qualified immunity is whether officers are on fair notice that what they're doing is unconstitutional. And what the Supreme Court in this court has held is that you need to have cases that are clearly established on these on similar set of facts to show that in this type of situation, what the officer did was unconstitutional. So what's your best case on this point? I think I think I think your best argument is that at the moment where that Smith had his hands up, that Officer Olvera was required to wait. And the other officers, as we know now, were within a minute of arriving. Yes, Your Honor, Longoria clearly establishes that on these facts and Cruz provides additional support for the fact that any movement out of that position of surrender could equally be construed as compliance with Olvera's orders in the context of a high speed car chase where the suspect has exhibited dangerous behavior. I'll turn now to the second clearly established principle controlling this case, which is that officers cannot use force against suspects who are not resisting. And the case on point for these facts is Jones v. Las Vegas Metro Police Department. In that case, officers, it was unreasonable for officers to use continuous, repeated applications of a taser on a suspect who was on the ground, had physically impaired mobility and was non-resisting. And so too here, like Jones, Smith was on the ground while Olvera was beating him. His mobility was impaired on account of his pre-existing injuries and a reasonable juror could find that he was non-resisting. Those cases, and there's a lot of them, really cluster around whether handcuffs have been applied, which they hadn't been here, or whether the individual is otherwise sufficiently restrained that he can't resist. And I don't see that in the video clips that we have. I don't see that Officer Olvera continued to deliver blows past the time where Smith was detained. Do you think I missed that? No, Your Honor. After Smith was handcuffed, Olvera did not appear to issue baton blows, but it's still in the, but Jones is still applicable on the principle that even prior to the suspect being actively handcuffed, once the suspect is on the ground and not physically resisting arrest in any way, a use of intermediate force like a baton or like a taser is unconstitutional. What do we do with Mr. Smith's testimony that he was struggling during the period of time when they were trying to subdue him? Your Honor, later in Smith's deposition, he also claims that he was non-resisting. And there's evidence from this, from the record, a reasonable juror could conclude that, in fact, he was non-resisting and that even if he was attempting to struggle, his own testimony seems to be inconsistent on that point. And so we're supposed to ignore that as we construe the facts in light, in the light most favorable to him. Your Honor, I believe a couple of points in response, digging deep in the details of the record at ER 176 is one of the points where Smith mentions that he may have been struggling, but we have nothing, the record, the pages right before that specify what question was asked for Smith to elicit that response is missing. So we have no idea what he was actually asked to generate that response. And second, this court has held in cases like the state of Hernandez and Zion v. County of Orange that suspects' movements after force has been inflicted might reasonably be understood as due to pain and thus nonthreatening. And I want to just quickly return to your point, Justice Christen, about the totality of the circumstances, because as you pointed out, the Supreme Court has emphasized that it is the totality of circumstances officers must consider when deciding whether force is justified. But the Supreme Court went on in Barnes v. Felix to emphasize that it is often the situation at the precise moment that forces apply that matters most. And here, after Smith crashed his car, his vehicle was indisputably not an issue in Officer Olvera's safety analysis. And Officer Olvera had 15 seconds between when Smith crashed his car and when he approached Smith, including having to leap over a fence and close the distance between Smith to see that during that time, Smith was on his knees with his hands up and nothing Smith did after that moment suggested that he posed an immediate threat. Did the Supreme Court's recent decision in Barnes change this notion about looking at reassessing force in freeze frame? No, Your Honor. It simply said the totality of circumstances is still the core analysis, but that that moment of precise moment force is applied is key. Thank you for your argument. Thank you, Your Honors. May it please the Court. Good morning. My name is Brent Ryman from Reno, Nevada, defending Brian Olvera in this case. And I think before I get into the full analysis of the constitutional violations and the facts of this case and all the questions that I know the panel will have for me here, I think it might be important to start with a concept that Judge Schramm got exactly right. And that concept came in the first portion of the Graham v. Conner analysis, the severity of the climate issue. And she said, quote, and this is on page 1157 of the reported decision, quote, the severity of the climate issue is both a proxy for how dangerous a suspect is at the time force is applied and also an independent factor in deciding a constitutional violation. And the reason that I think that that's important here is because it informs the analysis of what a reasonable officer might perceive as the totality of the circumstances, because as the panel correctly noted here, part of the pellant's argument is that the act of potentially raising some hands is a freeze frame and that at that point, nothing else matters. But when you say potentially raising his hands, there's a photo. There's a he has his hands up, boxed in. He's got he's surrounded by fences. He's got his hands in front of him, Your Honor. But I agree. I think he's got his hands up and then he moves forward to go down. Do you think I misread the video? Well, that's sort of a universal gesture. I give up. I do. I think he has his hands in front of him, Your Honor. But either way, I don't want to create an issue of fact here and argue with the panel about the facts. The point that I want to engage in opposing counsel's argument, and I find it I think this was a hard case. I don't think it's a close case because what we know there was radio traffic. It's a little hard to pin down exactly when Officer Oliver was aware that he had backup, but he had a lot of it. A couple other officers arrived, I think, within a minute. So opposing counsel argues, I think, with some justification that one option here would have been to just wait a second. He jumped over the fence. The other gentleman arrived very shortly thereafter. And, you know, there's some pretty serious injuries here. So I think it's a tough call. I appreciate that it was dark. I appreciate that we don't do this with 20-20 hindsight. But I don't think it's a slam dunk. My point, Your Honor, would be that that's exactly why there's qualified immunity for tough calls. And in this case, I'm glad I have the opportunity to argue this today because I've been thinking a lot about the duty to reassess and the opportunity that plaintiffs or appellants have for freeze frames to perhaps I was a little inarticulate when I was talking about hands up or hands in front earlier. But the idea that you can put a freeze frame in a brief and say, once the officer sees that freeze frame, the officer has a duty to forget everything that happened before then. And that's not the case because that would be the opposite. It's not the law. And it's asking a lot, given this chase sequence, for everybody to just sort of relax. Wasn't a lot of adrenaline. But there was the option. Opposing counsel does make the argument since his client at that point is fenced in, I think, pretty clearly. Officer had to jump over a fence to get to him. He's not going to flee anymore. And he's got his hands up. So why was it reasonable to come after him with a baton? He's fenced in with a wounded animal, Your Honor. He's fenced in with someone who's- Well, not until he jumped over the fence to get in there. Right. Once he's in there, he's going to subdue the suspect. He's going to arrest the fleeing suspect. He knows the totality of the circumstances, everything that's happened in this extremely dangerous chase up to then. He does the duty to reassess. And, excuse me, appellant points out a number of opportunities to reassess the situation. But the duty to reassess is not a duty to forget everything that happened before then. Right. But I think you seem to be arguing that there is no duty to reassess, even in the context of the totality of the circumstances. And I guess my question then is, once he's subdued with the first baton strike or second, then the repeated striking then brings some of the duty to reassess into play here in terms of whether there's a genuine issue of material fact. To go back to the beginning of your question, Your Honor, I'm not arguing there's no duty to reassess. OK, thank you. I think that officers are constantly reassessing. In the real world, officers are constantly reassessing based on the totality of the circumstances as they evolve over the course of an event. And so I'm not arguing that there's no duty to reassess here. And I'm saying that, in fact, Officer O'Vara did constantly reassess this situation. And in regard to Judge Kristin's question, and I won't get—  I'm going to talk about the repeated baton blows. But in regard to the question about being in the caged area, in the fenced area, I guess, I don't know that that's necessarily a factor that is favorable for appellant here. That's a situation where you're in close contact with someone where you don't have the ability to transition to a different type of force, a different instrument to use. And you're in there with someone else who can then do a number of things. They can, if they have some kind of a firearm or weapon, they can have much more accurate fire, much more opportunity to strike or injure you. And for that reason, Officer O'Vara has the baton. He's already assessed the situation and decided what he's going to be in there with, which allowed him to also get over the fence, as you've seen in the video. And, Judge Thomas, I think I need to assess the repeated baton blow question that you had. And the answer is that I think you were incorrect at the beginning of that question when you indicated that appellant had been subdued, had been captured. Well, I mean, that's their, you know, their contention. So it's not my conclusion. I'm just saying that's their contention. And that's what I'm asking you to respond to. Well, I apologize for the insinuation. No, no, that's fine. I just don't think the record shows that. And I think the record shows that the repeated baton blows were necessary here. I wish we had more clear video. I haven't personally worn a body-worn camera in one of these situations, but these things happen. But we need to judge this from the perspective of the officer. And the plaintiff at the summary judgment stage has the duty to prove the indisputable issue of material fact. And he can't do that. I think one thing that just came out at the very end of that argument was he can't do that with conflicts in his own testimony. And I think there's several cases on that. I always cite them in my report. Counsel, I'd like to back up for one second and make sure that we're on the same page about the degree of force that was being used. We typically look at tasers or batons and classify them as the use of intermediate force. But of course, you're very familiar with our definition for deadly force, force capable of causing death or serious bodily injury. And so use of a baton can become deadly force if somebody hits somebody else over the head with it, right? That's my understanding. And that's certainly what Judge Schramm ruled in her order based on the Young decision. Right. At some point, I think the defendant has not conceded that he ever hit Mr. Smith in the head with a baton. But there's strong circumstantial evidence that one of the blows landed there. Whether that was intentional or not, I don't know. It was dark. Maybe there was squirming going on. But he winds up with some injuries to his face, including some broken teeth. And there's no blood in the car after he crashed the car in the tree. So there's strong circumstantial evidence that at least one of these blows landed on his head or face. Let me just say as a hypothetical, and I'll tell you, that's my scorecard. But I don't know that I remember any case law where it's comparable. In other words, we typically look at the instruments used and decide whether that's force capable of causing death or serious injury. But I'm not so sure if someone swinging a baton in the dark, or at least a very dark area, whether if one of those blows happens to land on somebody's head or face, that's the use of deadly force. Do we have any case law about that? I don't. Well, we have the Young decision, which talks about when it could be deadly force. But I think that's just in a much different context of a restrainer. I'm really suggesting that the use might depend on what Officer Alvara intended. Is that right? I think it can, Your Honor. And it's a difficult question with the use of the baton, because theoretically, it could be deadly force. But this is a dark situation, as you mentioned. And I think Judge Trump did a really good job in this decision of framing the issue, which is always what I think is most important in these things, and not too high an issue of generality as to what clearly established law would need to be, which I think is what we're talking about here. I think opposing counsel's got that rule statement correct. We have said repeatedly, if somebody is subdued and there isn't a danger of a weapon, I don't think they could be using this degree of force, counsel. Do you think I've got that wrong? If someone is subdued and there's no chance of them using a weapon, I would agree that you cannot hit them with a baton, whether it would be intermediate force or deadly force. OK. But that's not what we have in this case. OK. So, yeah, I'm just trying to make sure I didn't misunderstand your suggestion of a rule statement. It sounds like I almost did. But we're on the same page now. Could you tell me, is it Officer Olvera's continued position that there isn't evidence of a baton strike to the head or face? Your Honor, I would say that Defendant Olvera's position is that plaintiffs have not created a genuine issue of material effect as to whether there's, they haven't met the burden to show that there's evidence of a baton strike to the head, neck or face. Why not? Because they haven't. He's got the wounds that, you know, the broken teeth that wilt on the face and there's no blood in the car. And again, I don't want to argue the facts and the evidence with you, Your Honor, but to go back to his deposition, which, by the way, was a very interesting deposition. But answer the question first. I agree there's interesting, but if you could stay on the question. The standard, Your Honor, is that he's only speculating. He's just looking at the evidence like the rest of us. That's wrong with circumstantial evidence. It reminds me of the law school example of, you know, is it snowing outside? Did it snow last night? He's got these, there's no indication that he had broken teeth at the start of this chase, right? The difference is that in this case, there's a snow machine that could have made the snow outside, Your Honor, because he ran into a tree. Yes, but there's no blood in the car, right? And we have photos and there's no indication that there was any, he was bleeding pretty, we can see that in the photos. Significantly bleeding after these injuries were inflicted. And I don't see anything. And there's a white interior inside the car. Your Honor, I don't want to argue the evidence and the facts with you, but I would go back to Judge Trom's definition of the clearly established law that she was looking for. And this is. Well, before you do that, I think they did. And I'm trying to give you a chance to respond. I think they did raise a material dispute effect about whether there was a baton blow to the head counsel. And I just want to make sure that I get, I have the benefit of Officer Alvarez's counsel giving me your response about the legal significance of that. The legal significance is that even if that happened, Defendant Alvarez should be entitled to qualified immunity in this case. Because on page 1159 of Judge Trom's reported decision, she defines the issue of what she needs to see as clearly established law. What the issue here is in this case. And it goes back to what I was saying at the very beginning. That's the totality of the circumstances. You take into account the chase, the fact that he's in a confined area with this suspect who's just escaped a car, has manifested his intent to potentially injure, to do whatever he needs to do to get out of this situation. As Judge Trom says, the relevant question here is, quote, whether clearly established law prevented a reasonable officer from concluding that Smith posed an immediate threat to the safety of that officer. That Smith was engaging in a serious crime or that Smith was fleeing. And based on the totality of the circumstances, I think we can answer those questions in favor of Defendant Alvarez and he should be entitled to qualified immunity here. And we would request that the panel affirm. I have a question about this. So if we were to conclude that a jury could find that Mr. Smith was hit on the head with a baton and that Officer Olvera intended to hit him on the head, do you think that the law is clearly established? And I guess we need a third fact. A third fact is that Mr. Smith was not resisting. If we were to conclude that a jury could reach those three facts, is the law clearly established such that you don't get qualified immunity for summary judgment? No, Your Honor, there's not a case on point. And to go back to the intent question. So why isn't there? Because again, I've established the person is not resisting and the person has received deadly force. In the hypothetical. Why isn't that established? Because the relevant question is whether a reasonable officer in those situations would perceive it, not whether there is the underlying constitutional violation that a reasonable jury could differ on. And in this case, you're going to need clearly established law on the exact issue that Judge Traum correctly decided that I just read to the court. And that would be defendant Olvera. Would that ever be a jury question? Would you ever ask the jury, you know, you heard the testimony of the officer and the plaintiff. And do you think that the officer reasonably understood that he was or reasonably realized that he was surrendering? That's an interesting procedural question, Your Honor. In some cases, we can have qualified immunity issues that go to the jury, but they don't really get phrased in that kind of a way. So I don't think the jury question would be exactly what you've just put out there. But here, qualified immunity is an immunity from suit. But I'm aware that these go to the jury sometimes. And so if this went to the jury, how would the question be phrased? Well, the jury is going to need to decide the underlying facts that would go to the jury. But you've just argued that, you know, for qualified immunity, it's about the officer's perception. I think that that's correct. So how do you present that to the jury? I think we would probably need to spend some time with Judge Traum examining exactly what the facts that would lead to the officer's perception would be. And there would be specific jury questions that got hammered out on those issues. And I apologize for weaseling out of that question, Your Honor. But I think that's a difficult question. It would really depend on a lot of factors that go to whether the jury is deciding issues that would lead the court to then decide the issue of qualified immunity or not and what exactly those issues would be. So I'm not entirely sure how to answer that question. Thank you for your argument. Thank you. Good morning. May it please the Court. Rachel Averitt-Tockington for the appellant. I have three points I'd like to make on rebuttal, Your Honors. But first, I want to begin by making a comment. Judge Forrest, your hypothetical on the set of facts that a jury could find is exactly what the district court should have looked at here when looking for a clear statement of the law. Because a reasonable jury could find every one of those facts you've just discussed. No, but I think, I mean, you know, I think it's important for the district court to look Yeah, maybe so. I mean, I'm still thinking about it. Some of those facts I definitely think the jury reasonably could find, whether the whole list I'm still thinking about. But your friend points out that for qualified immunity, it's also about the officer's perception. It's not about what the ultimate, what the jury ultimately would find was the circumstances, right? What does the officer understand is happening? This is a short time period. We're talking about less than a minute or something when he was all by himself with Mr. Smith. We're talking about a lot of adrenaline following this pretty dramatic experience, right? So we have to think about all of those things. And the question is, are the factual issues here so unsettled that we can't apply our case law to know what's clearly established and what isn't? No, Your Honor, and that's the first point I wanted to make, which is to address the totality analysis here. This court has clearly established that a suspect's prior violent crimes, even if they've occurred just moments before the officer arrives, do not justify deadly force against that person if they're indisputably not engaged in that conduct. That was the reason I think that that's a hard argument for you here is because I agree with Judge Kristen. What she said earlier is this is a hard case. This isn't an easy case. And sometimes we get factual circumstances where it's pretty obvious that an officer really should have recognized that something shifted, something changed, right? I don't have a circumstance off the top of my head, but I've seen those fact patterns where it's just unreasonable for you as the officer not to shift gears because something has changed. And here, can we say that as a matter of law? Yes, Your Honor, and that's because I would direct this court to the Supreme Court's decision in Tolan v. Cotton, where they instruct that even when looking for a clear statement of the law, again, on summary judgment, all facts must continue to be viewed in Mr. Smith's favor. And so here, what Mr. Officer Olvera was confronted with was a suspect who was kneeling on the ground who had his hands in the air. And we're not just asking the court to just look at that freeze frame. Throughout their encounter, there were other opportunities for Olvera to reassess his force. And I'm thinking specifically of after the video cuts out at around minute 625, Officer Olvera says, put your hands behind your back. And Mr. Smith says, they are behind my back. So at this point, again, this is several seconds after he's already begun to beat Mr. Smith. For purposes of summary judgment, we have to consider that Mr. Smith was on the ground and had his hands behind his back. And in that moment, that is clearly established to be unconstitutional. And given you the constitutional prong, the question is the qualified immunity prong. So we're looking to see what officer, you know, is there something, some case law out there that would have put any officer in his position on notice? So what would be wrong with an instruction to the jury following up on Judge Forrest's hypothetical to say, if you find, they will have seen all the evidence, right, in this hypothetical. If you find that Mr. Smith had surrendered, then at that point, any additional use of intermediate or deadly force is excessive. Any officer would have known that. What would be wrong with that type of instruction to a jury in this case? I don't believe we have any issue with that type of instruction. It's our contention that a jury could find he did surrender. And that after that point, you're exactly right. The case law does clearly establish that any continued use of intermediate force would be unconstitutional. Here's the problem. This is what I said at the top of the hour. And I'm sorry to tell you, I saved the hardest question for you, although your co-counsel did a great job, too. So I'm sure you're up to the challenge because you're both really well prepared. And we appreciate that very much. But I think that's right. I think that for me, the hard part is the what I think is the universal gesture of surrender. But at the deposition, you know this already on ER 171. The question was, do you understand how a reasonable officer approaching you from the back could be concerned that you might be going for some type of weapon? And the response from Mr. Smith was absolutely. I'm not like you said. And then he says, I mean, it was dark. It was two o'clock in the morning, you know, so I don't know. And so, you know, if we go back to the chamber's factors, the very most important thing was, was there really a danger? And if this officer still thought that Mr. Smith, you know, he didn't know Mr. Smith had these physical disabilities yet. He didn't know one way or another about the weapon. He his police report says, I thought his hand was going close to his waistband. So even though he's done this international, what I think of as a sign of surrender, then there's this deposition answer from Mr. Smith. How would you, how do you respond to that? And you know, I see that I'm out of time. I answered the question. First of all, Your Honor, in his deposition, he does say that. And I believe that that's primarily based on the fact that he later goes on to say he was wearing baggy clothes. But of course, that's not the constitutional law that officers, a reasonable officer should know about confronting a suspect who potentially has a weapon. It is not enough to use deadly force against them just because they may have a weapon. Like you said, it's the threatening gesture. And here on summary judgment, we believe a jury could find he did not make any movement towards his waistband because I'd point to Cruz v. City of Anaheim where there the suspect was unarmed. But we don't have conflicting physical evidence like we had in Cruz. Not in this case. I don't see it. Well, Your Honor, I'm pointing to Cruz for the idea that a jury could find a suspect didn't reach for his waistband because he was unarmed. And that's circumstantial evidence that that movement didn't occur. And that's the same thing here because Mr. Smith, as we know now, was unarmed. This officer can be wrong. He just can't be unreasonable. We don't expect perfection of officers, you know, in this kind of heat of the moment, particularly after this kind of a high speed chase. So that's my word. But parts of it were high speed. The very reckless lead up. Right. And so he can be wrong. The question was unreasonable in perceiving that there was a risk of a weapon. Yes, Your Honor. Again, here, because of that symbol of surrender with his empty hands and viewing the facts of Mr. Smith's favor going down on the ground when he was told to get down on the ground, putting his hands behind his back when he was told to put his hands behind his back. All of that. A reasonable officer would not assume that that suspect is threatening him with a weapon. All right. Is there anything further? No, I don't think there is. We want to thank all of you for your strong advocacy. It's an important case and we'll give it our full attention. We'll take an advisement and go to the last case on the argument calendar for the day. I want to thank all the participants on the pro bono clinic.
judges: THOMAS, CHRISTEN, FORREST